# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS.  SUPERIOR COURT
C.A. NO. 1683CV00113

| | |
|---|---|
| TOWN OF PLYMOUTH,<br><br>Plaintiff<br><br>v.<br><br>VEOLIA WATER NORTH AMERICA -<br>NORTHEAST LLC, and VEOLIA WATER<br>NORTH AMERICA OPERATING<br>SERVICES LLC<br><br>Defendants | **COMPLAINT**<br> |

## PARTIES

1. The Town of Plymouth ("Town") is a municipal corporation and political subdivision of the Commonwealth of Massachusetts with a principal office at 11 Lincoln Street, Plymouth, Massachusetts.

2. Veolia Water North America – Northeast LLC is a foreign limited liability company with a Massachusetts office located at 120 Water Street, Suite 212, North Andover, Massachusetts.

3. Veolia Water North America Operating Services LLC is a foreign limited liability company with a Massachusetts office located at 120 Water Street, Suite 212, North Andover, Massachusetts.

## FACTS

4. In 1987, the Commonwealth of Massachusetts commenced an action against the Town for alleged violations of the Massachusetts Clean Waters Act, G.L. c. 21, §§ 26-53, entitled, Commonwealth of Massachusetts v. Town of Plymouth, Suffolk Superior Court, C.A. No. 87-2185.

5. In 1992, the Town and Commonwealth agreed to the entry of final judgment, which required the Town to plan, design and construct a new wastewater treatment facility.

6. On August 6, 1997, Chapter 138 of the Acts of 1997 was enacted, authorizing the Town to solicit proposals and to enter into contracts for the design, construction, operation and maintenance of a wastewater treatment facility, collection system and appurtenant facilities in accordance with the procurement process set forth in G.L. c. 30B, § 6.

7. On April 15, 1998, the Town published a Request for Proposals to "Design, Build, Operate and Maintain a Wastewater Treatment Facility Including Sludge Processing and Disposal with an Option to Operate and Maintain an Existing Wastewater Collection and Conveyance System" ("WWTF RFP").

8. On February 24, 1999, the Town published a Request for Proposals to "Design and Build a Wastewater Pumping Station and Dual Force Mains" ("Pump Station RFP"), which required the design and construction of a pump station and dual force mains, i.e., an influent force main and effluent force main.

9. The Pump Station RFP included a preliminary design prepared by Camp Dresser & McKee ("CDM") under a contract with the Town, and required that the successful offeror complete the design of the pump station and force mains using the preliminary design prepared by CDM.

10. The preliminary design prepared by CDM and included in the Pump Station RFP required that the influent force main be a ductile iron pipe or pre-stressed concrete cylinder pipe.

11. Section 2.1.5 of the Pump Station RFP, entitled "Force Main Odor and Corrosion Control," states: "The length and large size of the force main are expected to contribute to the formation and release of hydrogen sulfide within the force main. . . . Hydrogen sulfide is produced by bacteria in the wastewater under anaerobic conditions. . . . [A]naerobic conditions will occur within the force main because of the long transit time to the new wastewater treatment plant."

12. U.S. Filter Operating Services Inc. ("USFOS") submitted proposals in response to both the WWTF RFP and the Pump Station RFP.

13. The USFOS proposal in response to the Pump Station RFP is dated April 8, 1999 (the "Pump Station Proposal").

14. In Section 7 of the Pump Station Proposal, USFOS set forth its understanding of the design of the pump station and force mains as follows:

   a. "The design criteria . . . include . . . Chemical addition for force main odor and corrosion control." (p. 7.1)

   b. "Because of its length, the force main has been sized for low flow velocities, resulting in low head losses. The reduced velocity will allow

settling of heavy solids and the lack of high velocities will preclude their re-suspension. Thus, grit removal at the pumping station is essential." (p. 7.3)

c. "The high rate of solids deposition that will occur in the force main will require frequent cleaning." (p. 7.4)

d. "[T]he operation of the pump station and force main will produce large amounts of Hydrogen Sulfide in the force main. The Hydrogen Sulfide will have a tendency to weaken and corrode the concrete lining of the Ductile Iron Pipe." (p. 7.4)

e. "However, the pumping station will be equipped with means to launch a pipeline cleaning 'pig' to clean the force main." (p. 7.4)

15. In Section 10 of the Pump Station Proposal, USFOS proposed a "Force Main Odor/Corrosion Control System."

16. In its Pump Station Proposal, USFOS proposed the installation of chemical tanks for odor and corrosion control.

17. On page 4 of Section 6 of its proposal in response to the WWTF RFP, USFOS stated that "it is expected that the force main will require periodic cleaning due to the proposed large diameter force main from the pumping station to the treatment plant and the resulting low souring velocity."

18. USFOS was not awarded a contract under the Pump Station RFP.

19. Fay Spofford and Thorndike Inc. and P. Gioioso & Sons Inc. (collectively, "FST") jointly submitted a proposal in response to the Pump Station RFP. The Town

awarded a contract to FST pursuant to the Pump Station RFP for the design and construction of a pump station and force mains.

20. The Town awarded a contract to USFOS pursuant to the WWTF RFP to (i) complete the design of, and construct, a new wastewater treatment facility and (ii) operate and maintain that facility and the pump station and force mains that were to be constructed by FST.

21. Subsequent to the award of contract to USFOS, on November 10, 1999, the Town and USFOS entered into a Contract for Operation and Maintenance Relating to Town of Plymouth, Massachusetts Wastewater Treatment Plant and Contract System ("O&M Contract").

22. Before it signed the O&M Contract, USFOS knew that the operation of the pump station and force main (to be constructed by FST) would produce large amounts of hydrogen sulfide in the force main, and that if it did not implement an adequate maintenance and corrosion-control program, the hydrogen sulfide would weaken and corrode both the concrete lining of the ductile iron pipe used for the force main, and the pipe itself.

23. In 1999, USFOS was acquired by (i) Veolia Water North America Operating Services LLC or its predecessor, or (ii) Veolia Water North America – Northeast LLC or its predecessor (individually and/or collectively, "Veolia"), and all of the rights, duties and obligations of USFOS under the O&M Contract were fully assumed by Veolia.

24. Section 301(a) of the O&M Contract requires Veolia to, among other things, "provide O&M Services to operate and maintain the Contract System . . . in

accordance with Applicable Law and the Legal Requirements and in accordance with Good Industry Practices. . . . USFOS will perform all Services described in the O&M Scope of Work, attached hereto as Exhibit 302, and will perform all Services as specified in the O&M Manual."

25. Section 3.0 of Exhibit 302 of the O&M Contract requires Veolia to, among other things: "Be responsible for the cleaning of approximately 20,000-30,000 feet of sewer mains annually, making necessary repairs and/or replacement of lines as required" (¶ 31); and, "Replace annually approximately 1,000 feet of sewer main for the purpose of upgrading the sewer system. . . ." (¶ 33).

26. Section 101 of the O&M Contract defines "Contract System" as including, among other things, the wastewater treatment facility designed and constructed by Veolia, and the dual force mains and pump station to be designed and constructed by FST.

27. Section 101 of the O&M Contract defines the term "O&M Manual" as "the manual containing detailed standard operating procedures and other specific instructions, policies, directives, routines, schedules and other matters relating to O&M and maintained as required by Exhibit 302."

28. Paragraph 1 of Section 3.0 of Exhibit 302 of the O&M Contract required Veolia to, among other things, prepare a new operations-and-maintenance manual for the Contract System, which is referenced in the O&M Contract as the "O&M Manual." That paragraph states that the "portion of the new O&M Manual addressing the operations of the Modified Pump Station and Force Mains shall be provided by the Town of [sic] USFOS and shall have been prepared by the Town's contractor responsible for the design

and construction of the Modified Pump Station and Force Mains," which "contractor" was FST.

29.  The portion of the O&M Manual prepared by FST for the pump station and force mains ("Force Main O&M"), dated January 2004, states as follows:

   a. "The length and large size of the raw wastewater force main are expected to contribute to the formation and release of hydrogen sulfide within the force main. . . . In addition, the hydrogen sulfide can be biologically converted to sulfuric acid, which will attack the lining of the cement-lined ductile iron pipe used to construct the force main. By reducing the generation of hydrogen sulfide within the force main, odor and corrosion problems can be diminished. This goal can be accomplished by using a ferrous sulfate solution. Chemical storage tanks and feed pumps have been provided at the WSPS [i.e., the pump station] for this purpose." (§ I, ¶ 3.7)

   b. "To assist in maintaining the raw wastewater force main sewer, a pig launching station has been included and is located in front of the WSPS building." (§ I, ¶ 3.15)

   c. "It is imperative that the force mains and pressure sewers operate as designed to insure dependable transport of the raw wastewater to the treatment plant and final effluent to the outfall. High and low points in the system have air & vacuum relief valves and blowoffs, respectively on both piping systems. These important appurtenances must be maintained on a

regular basis. This would include inspection and flushing of each location on a regular basis." (§ II, ¶ 3.4)

30. Veolia received a copy of the Force Main O&M Manual no later than Winter 2004.

31. On December 19, 2015, the Town learned of a failure in the wastewater force main at or near Route 30, Plymouth, which resulted in a significant discharge of untreated sewage.

32. On January 27, 2016, the Town learned of second failure in the wastewater force main at or near Braley Road, Plymouth, which resulted in a significant discharge of untreated sewage.

33. On January 31, 2016, the Town learned of a third failure in the force main at or near Westerly Road, Plymouth, which resulted in a significant discharge of untreated sewage.

34. Veolia was required but failed to develop and implement an adequate corrosion-control program for the force main.

35. Veolia's failure to develop and implement an adequate corrosion-control program for the force main resulted directly in the premature (internal) corrosion and failure of the force main.

36. The failure of the wastewater force main was caused by the premature (internal) corrosion of the force main, which, in turn, was caused by Veolia's failure to operate and maintain the force main in accordance with the terms and conditions of the O&M Contract.

## COUNT I
## BREACH OF CONTRACT
## (ALL DEFENDANTS)

37. The preceding paragraphs of this Complaint are incorporated herein by reference.

38. Veolia materially breached the O&M Contract by failing to operate and maintain the force mains in accordance with the O&M Contract.

39. Veolia's breach caused the premature corrosion and failure of the Town's force main.

40. As a direct result of Veolia's breach of the O&M Contract, the Town has incurred significant damages in excess of $1,000,000, and is expected to continue to incur significant damages.

WHEREFORE, the Town hereby demands judgment against Veolia for the Town's damages, plus interest, attorneys' fees, costs of suit, and such other relief as the Court may deem appropriate.

## COUNT II
## NEGLIGENCE
## (ALL DEFENDANTS)

41. The preceding paragraphs of this Complaint are incorporated herein by reference.

42. Veolia owed a duty to the Town to operate and maintain the Collection System, including the force mains, with reasonable care and in accordance with the O&M Contract.

43. Veolia breached its duty to operate and maintain Collection System, including the force mains, with reasonable care and in accordance with the O&M Contract.

44. Veolia's breach of its duty proximately caused the premature corrosion and failure of the Town's force main.

45. As a direct result of Veolia's breach of duty, the Town has incurred significant damages in excess of $1,000,000, and is expected to continue to incur significant damages.

WHEREFORE, the Town hereby demands judgment against Veolia for the Town's damages, plus interest, attorneys' fees, costs of suit, and such other relief as the Court may deem appropriate.

## JURY DEMAND

**The Town respectfully requests a trial by jury on all claims so triable.**

PLAINTIFF,
TOWN OF PLYMOUTH

By its attorney,

Richard T. Holland (BBO# 632661)
Kopelman and Paige, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110
(617) 556-0007
rholland@k-plaw.com

546721v2/23903/0016